IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**HERBERT F. BARKER, JR.,**

    **Plaintiff,**

v.                                                                               CASE NO. 2:13-cv-22110

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (hereinafter DIB), under Title II of the Social Security Act, 42 U.S.C. § 401-433. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion to Remand (ECF No. 8), Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Remand (ECF No. 8-1), Brief in Support of the Defendant's Decision (ECF No. 10) and Plaintiff's Reply Memorandum (ECF No. 12).

Background

Herbert F. Barker, Jr., Claimant, protectively filed a Title II application for a period of disability and disability insurance benefits (DIB) on June 23, 2010, alleging disability beginning on July 15, 2009 (Tr. at 80). He stated that the physical conditions that limited his ability to were

moderate to severe valve aortic valve regurgitation, congestive heart failure and loss of hearing in his left ear (Tr. at 261). The claim was denied initially on November 30, 2010 and upon reconsideration on February 14, 2011.

On April 4, 2011, Claimant made a request for hearing by Administrative Law Judge (ALJ) (Tr. at 139). In his request for a hearing, Claimant stated that he disagreed with determination made on his claim for disability because he is disabled and cannot work. He further stated that he had no additional evidence to submit (Tr. at 139-140). An administrative hearing was conducted on April 18, 2012 (Tr. at 96-124). In the Decision dated April 30, 2012, the ALJ determined that Claimant was not disabled under Section 216(i) and 223(d) of the Social Security Act (Tr. at 80-90). On or about June 27, 2012, Claimant requested a review by the Appeals Council (Tr. at 66). The Appeals Council received additional evidence dated June 22, 2013, and made it part of the record. (Tr. at 6-7). The Appeals Council also looked at additional evidence (Tr. at 1-4). On June 22, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). The Appeals Council further stated "the Administrative Law Judge decided your case through April 30, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 30, 2012" (Tr. at 2).

On August 21, 2013, Claimant brought the present action requesting a remand for consideration of new and material evidence.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous

period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

The ALJ determined that Plaintiff satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 82). Under the second inquiry, the

ALJ found that Plaintiff suffers from the severe impairments of moderate aortic regurgitation; pulmonary hypertension; left shoulder injury; osteoporosis; and mild obstructive ventilator insufficiency/chronic obstructive pulmonary disease. At the third inquiry, the ALJ concluded that Plaintiff's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 83). The ALJ then found that Plaintiff has a residual functional capacity for light work, reduced by limitations[1] (Tr. at 84). As a result, Plaintiff cannot return to his past relevant work (Tr. at 88). Nevertheless, the ALJ concluded that Plaintiff could perform jobs such as a non-postal mail sorter, an electronic helper and a battery tester, which exist in significant numbers in the national economy (Tr. at 89). On this basis, benefits were denied (Tr. at 89-90).

Scope of Review

The issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

---

[1] Claimant has the residual functional capacity to perform light work except the claimant can push and pull as much as he can lift and carry, and occasionally reach overhead with the left upper extremity. The claimant can occasionally climb ramps, stairs, ladders, ropes or scaffolds, and frequently balance, stoop, kneel, crouch or crawl. In addition, he must never be exposed to hazards, such as unprotected heights and moving mechanical parts, and can have occasional exposure to atmospheric condition, extreme cold, and extreme heat. He can frequently be exposed to vibrations (Tr. at 84-85).

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Plaintiff was born on January 8, 1963. On the alleged onset date of July 15, 2009, Plaintiff was 25 years old. He has a high school education and a certificate in computer repair (Tr. at 103). Plaintiff worked from September 1996 through December 2000 in computer repairs (Tr. at 104). From January 2000 through July 2009, he worked as a carpenter (Tr. at 104-105). He worked as a maintenance man from June 2011 through October 2011 (Tr. at 106).

<u>Plaintiff's Arguments against the Commissioner's Ruling</u>

Plaintiff asserts that the Appeals Council erred when it denied review of the ALJ's decision and did not reverse the ALJ's decision after Plaintiff submitted additional evidence. Plaintiff asserts the medical documentation contained in Plaintiff's Exhibits constitutes "good cause" for remand within the meaning of sentence six of § 405(g) (ECF Nos. 8, 8-1). Defendant asserts that substantial evidence supports the ALJ's finding that Plaintiff was not disabled. Defendant asserts there is no basis for the Court to remand this case for additional consideration of newly submitted evidence because Plaintiff has not met his burden of demonstrating that the evidence that he submitted for the first time to the Appeals Counsel is both new and material as

held by the 4th Circuit in *Borders v. Heckler*.[2] Defendant further asserts that Plaintiff failed to demonstrate that there was good cause for his failure to submit the additional evidence to the ALJ (ECF Nos. 8-1, 9).

Sixth Sentence of 42 U.S.C. § 405(g)

Plaintiff moves the Court for the entry of an order remanding this case to the Commissioner for further administrative proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g). Plaintiff asserts that remand is necessary because he submitted new and material evidence (ECF No. 8-1). The new evidence consists of medical records and "medical documentation." The new evidence includes a Residual Functional Capacity assessment (hereinafter RFC) completed by Plaintiff's treating physician Chara Freeman, M.D., stating the plaintiff should be limited to lifting 10 lbs occasionally, never carrying (Tr. at 75). Dr. Freeman's RFC was submitted after the ALJ's decision, but prior to the Appeal Council's denial. Plaintiff asserts the Appeals Council should have reversed the decision or remanded the matter back to the ALJ for review.

Plaintiff asserts that a Consultative Mental Health Examination conducted on November 10, 2013, by the West Virginia Disability Determination Services is new evidence of his Depressive Disorder and Anxiety Disorder. Plaintiff further asserts that treatment notes stating that Plaintiff was on medication for depression and anxiety are new and material evidence necessitating remand.

Defendant asserts that Plaintiff has not satisfied the requirements of remand pursuant to 42 U.S.C. § 405(g) (ECF No. 10). Defendant asserts that Plaintiff failed to demonstrate that the evidence submitted to the Appeals Council was new and material, and that there was good cause

---

[2] The Court may remand a case to the Commissioner "only upon a showing that there is new evidence, which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985).

for his failure to submit the evidence to the ALJ.

In considering Plaintiff's motion to remand, the court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 97.

In order to justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985).[3] In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause

---

[3] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in *Borders* in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g). The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, *Borders* has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that *Borders'* construction of § 405(g) is incorrect. Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992) (citations omitted).

for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. *Id.*

The ALJ's decision dated April 30, 2012, denied Plaintiff's claim for DIB. On December 18, 2012, eight months after the ALJ had issued his decision, Plaintiff submitted an RFC questionnaire that was completed by Dr. Freeman on June 22, 2012, only two months after the ALJ had issued his decision (Tr. at 73-76). Although Plaintiff asserts the RFC pertains to the entire time he had been treated by Dr. Freeman in 2007, the RFC does not state the timeframe of the assessment. Without this information, the RFC could pertain to the entire time of treatment or it could pertain to the time of the RFC assessment. Plaintiff did not meet his burden of demonstrating that the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative.

The Appeals Council stated in its notice of denial to review the ALJ's decision that "In looking at [Plaintiff's] case, we considered the reasons [he] disagree[s] with the decision and the additional evidence… We found that this information does not provide a basis for changing the Administrative Law Judge's decision" (Tr. at 1-2). The Appeals Council's notice of denial listed the evidence reviewed for their determination. The cardiac residual functional capacity questionnaire completed by Chara Freeman, M.D., dated June 2012, was included in the evidence reviewed. The Appeals Council stated "The Administrative Law Judge decided your case through April 30, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 30, 2012. If you want us to consider whether you were disabled after April 30, 2012, you need to apply again. We are returning the evidence to you to use in your new claim" (Tr. at 2).

8

Although Plaintiff has made a general showing of the nature of the new evidence by submitting a copy of the medical records and medical documentation, the Court must recommend that the presiding District Judge find that Plaintiff has not met the remaining requirements of *Borders*. In particular, Plaintiff has not shown good cause for his failure to submit this evidence earlier. The Court is not persuaded by Plaintiff's argument that good cause for failing to submit the evidence earlier is because the evidence did not exist. In addition, the new evidence post dates the ALJ's decision.[4] The evidence is not relevant to the determination of disability at the time the application was first filed. The Appeals Council explained that Dr. Freeman's RFC did not relate to the relevant time period, which ended on April 30, 2012, the date of the ALJ's decision. The Appeals Council further explained that if Plaintiff believes he became disabled after the date of the ALJ's decision, his remedy is to file a new claim for disability benefits. Thus, the Court proposes that the presiding District Judge find that Plaintiff's motion to remand should be denied.

Additionally, the RFC by Dr. Freeman was conducted two months after the ALJ's decision date. This Court held in *Hill v. Barnhart*, Case No. 2:05-cv-00207 (S.D. W.Va., December 15, 2005), that the claimant submitting an MRI report as new evidence failed to show good cause for his failure to submit the evidence earlier. The Court held "the new evidence post dates the ALJ's decision by almost six months and, as a result, the evidence is neither relevant to the determination of disability at the time the application was first filed nor material. The Court's proposed recommendation was adopted by the District Judge and the claimant's motion to remand was denied. In the present matter, the Court agrees with the rationale in *Hill* and found that Plaintiff failed to show good cause for his failure to submit the evidence earlier.

---

[4] Plaintiff submitted additional evidence two times. Dr. Freeman's RFC questionnaire was filed approximately two months following the ALJ's issuance of a decision finding that Plaintiff was not disabled. Plaintiff submitted additional evidence to the Appeals Council after the ALJ issued the decision on April 30, 2012.

9

Plaintiff waited two months after the ALJ's decision to obtain an RFC by Dr. Freeman and then, without explanation, waited until eight months after the ALJ's decision to submit the additional evidence to the Appeals Council.

Substantial Evidence

Plaintiff asserts that substantial evidence does not support the Commissioner's finding that Plaintiff can perform light work (ECF No. 8-1). The ALJ stated "the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can push and pull as much as he can lift and carry, and occasionally reach overhead with the left upper extremity. The claimant can occasionally climb ramps, stairs, ladders, ropes or scaffolds, and frequently balance, stoop, kneel, crouch or crawl. In addition, he must never be exposed to hazards, such as unprotected heights and moving mechanical parts, and can have occasional exposure to atmospheric condition, extreme cold, and extreme heat. He can frequently be exposed to vibrations" (Tr. at 84-85).

Plaintiff's position that substantial evidence does not support the ALJ's finding rests solely on his argument that the ALJ's finding of ability to perform light work is contradicted by the RFC completed by Dr. Freeman. Dr. Freeman found that Plaintiff should be limited to lifting less than 10 lbs occasionally, [and] never carrying (Tr. at 75). Plaintiff asserts that in light of Dr. Freeman's RFC, the ALJ's decision was not supported by substantial evidence and the Appeals Council should have reversed the decision or remanded the matter back to the ALJ for review. Although the matter of Dr. Freeman's RFC being filed after the ALJ's decision has been discussed above, the following discussion affirms that substantial evidence supports the Commission's determination to deny Plaintiff's claim for DIB.

In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

The ALJ's decision included a thorough discussion on what the ALJ considered in making his finding that Plaintiff has the residual functional capacity to perform light work (Tr. at 84). The ALJ stated that his finding was made "after careful consideration of the entire record." The ALJ's discussion included the following:

> the undersigned has considered all symptoms and to the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> In considering the claimants symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting

11

effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant submitted pain questionnaires and indicated he suffers from chest pain multiple times per day due to a history of cardiovascular problems. The claimant also reported he suffers from shoulder, left arm, and left leg pain, which is continuous in nature (Exhibits 4E, 10E, and 11E). Further, the claimant submitted adult function reports and indicated he has problems lifting, squatting, bending, standing, reaching, walking, kneeling, hearing, climbing stairs, seeing, and completing tasks. Additionally, he indicated he becomes short of breath, dizzy, and lightheaded with physical activities, and experiences an exacerbation of chest pain with physical activities (Exhibits 1E and 5E).

The claimant testified at the hearing [that] he is unable to work due to chest pain and shortness of breath. He indicated he suffers from chest pain once or twice daily for which he takes nitroglycerin. He also indicated he uses a nebulizer machine. However, the claimant indicated the treatment does not alleviate his pain and symptoms and he lies down throughout the day due to fatigue. Further, the claimant reported he suffers from ankle swelling with physical activities and must lie down or elevate his legs on average two times per week (see hearing testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ ] residual functional capacity assessment.

The objective evidence does not support the extreme limitations alleged and reveal the claimant is not fully credible. The undersigned notes the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Specifically, the undersigned notes the record reveals the claimant received no actual treatment for aortic regurgitation, pulmonary hypertension, or left shoulder injury. Further, the undersigned notes the claimant's chronic obstructive pulmonary disease/mild obstructive ventilator insufficiency was conservatively treated with medications by the claimant's general practitioners.

The record reveals a history of hospitalization in 2007 for malaise, followed by fever, dysuria, and fatigue. The treatment records documented evidence of a heart murmur and aortic insufficiency (Exhibits 4F and 5F). The undersigned notes,

however, treatment records dated 2008 from Jill Rosenstock, M.D. a general practitioner, indicated the claimant has been without cardiovascular complaints or symptoms. Dr. Rosenstock directed the claimant to cease smoking and undertook "extensive counseling" with the claimant regarding his tobacco abuse. Further, treatment records from Dr. Rosenstock dated 2008, documented the claimant's complaints of fatigue, back pain, and arthritis. Dr. Rosenstock documented an impression of osteoporosis, which was confirmed by a bone density scan (Exhibit 10F). The claimant also submitted treatment records dated 2008 from Marvin Vice, D.O., a general practitioner with Summersville Outpatient Center, which noted an MRI revealed evidence of a rotator cuff tear, left shoulder and adhesive capsulitis, left shoulder (Exhibit 6F).

The undersigned notes, however, the record reveals a significant gap in treatment until February of 2010. At that time, the claimant was admitted to the hospital for gastroenteritis, and an echocardiogram showed a left atrial enlargement. Additionally, a Doppler examination revealed evidence of aortic, mild mitral, and mild tricuspid regurgitation (Exhibits 8F and 9F). The record reveals after his release, the claimant followed with Dr. Rosenstock and reported fatigue, dyspnea and chest pain, but no palpitations, cough, dizziness, or fainting. She observed the claimant's blood pressure was borderline hypotensive, but noted he was currently on no medications. She also noted the claimant's heart rate, rhythm, and sounds were normal with no evidence of edema, and an examination of the lungs revealed respiration and rhythm were normal and the lungs were clear to auscultation (Exhibit 10F).

Further, subsequent to his release the claimant also followed with Mark Wantz, M.D., a general practitioner. Dr. [Wantz] noted an echocardiogram revealed the claimant's ejection fraction was good, but he presented with moderate aortic valve regurgitation. He also noted the claimant was developing some right sided pulmonary hypertension (Exhibit 7F). The record reveals Dr. Wantz referred the claimant to Donald Lilly, M.D., a cardiologist. Dr. Lilly noted that claimant's reports of atypical chest pain, occasional wheezing, some lightheaded or dizzy spells, and fatigue. Dr. Lilly noted, however, the claimant's description of chest pain was "clearly musculoskeletal in origin." Similarly, Dr. Lilly noted a physical examination revealed evidence of a systolic murmur, but was otherwise normal. Dr. Lilly noted the claimant's history of smoking and directed the claimant to cease smoking. With regard to his aortic regurgitation, he noted the etiology is unclear and directed the claimant to follow in six months. The undersigned notes treatment was rendered at that time (Exhibit 8F).

In October of 2010, Miraflor Khorshad, M.D., evaluated the claimant at the request of the West Virginia Disability Determination. The claimant reported to Dr. Khorshad a history of aortic regurgitation, congestive heart failure, loss of hearing in the left ear, low blood pressure, osteoporosis, and torn rotator cuff. The undersigned notes, however, a physical examination failed to reveal the type of significant clinical abnormalities one would expect for a disabled individual.

Specifically, Dr. Khorshad noted the claimant presented with a normal gait, no respiratory distress, and was able to get [o]n and [off] of the examining table. Similarly, he noted the claimant was able to do a heel/toe maneuver, sit, and squat. He also noted the claimant presented with normal range of motion in all extremities as well as the spine, with no evidence of neurological deficiencies. Further, he noted spirometric findings appeared normal (Exhibit 13F).

The undersigned notes in the fall of 2010, the claimant followed with his general practitioners for complaints of shortness of breath, and an x-ray examination of the chest revealed evidence of chronic obstructive pulmonary disease (Exhibit 11F). However, the record reveals a significant gap in treatment until February of 2011. At that time, the claimant sought treatment with Dr. Lilly, his cardiologist, for complaints of chest pressure and discomfort, and shortness of breath. Dr. Lilly ordered a nuclear stress test and echocardiogram. He also noted the claimant continues to smoke. Subsequent treatment records from Dr. Lilly dated June of 2011, noted the cardiovascular testing revealed mild to moderate aortic regurgitation, but left ventricular dimensions were within normal limits. Similarly, he noted a nuclear stress test was normal with an ejection fraction of 55%. Dr. Lilly noted the claimant's chest discomfort is mostly atypical and directed the claimant to monitor his blood pressure as he may need an antihypertenstive. Again, he directed the claimant to cease smoking (Exhibit 19F).

In January of 2012, the claimant sought treatment from Chara Freeman, M.D., a general practitioner, and reported fatigue and shortness of breath, but no chest pain, discomfort, or palpitations. The undersigned notes, however, a physical examination was normal, as was an examination of the lungs. In addition, the claimant's blood pressure was noted to be 128/72. Due to the claimant's reports of shortness of breath, he was directed to undergo Spirometry testing, which revealed evidence of mild obstructive ventilatory insufficiency, with an eleven percent increase in $FEV_1$, post bronchodilator (Exhibit 18F).

The record reveals the claimant followed with Dr. Freeman in April of 2012 and continued to complain of difficulty breathing. She noted Spirometry testing revealed evidence of chronic obstructive pulmonary disease. The undersigned notes, however, Dr. Freeman's treatment records failed to reveal the type of significant clinical abnormalities one would expected for a disabled individual. Specifically, the undersigned notes an examination of the lungs was normal. Similarly, an examination of the cardiovascular system was normal. Further, Dr. Freeman noted the claimant generally appeared in no acute distress (Exhibit 18F).

The undersigned further notes the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Specifically, the claimant submitted adult function reports and indicated he has no problems caring for his personal needs and grooming, can prepare meals, can do household chores such as making the bed or

> sweeping the floor, can drive, shops in stores, manages his finances, cares for his dogs, and uses the computer or watches television daily. The claimant also indicated friends and family come to visit his home and he goes to visit them one to two times per week (Exhibits 1E and 5E).
>
> As for the opinion evidence, James Egnor, M.D. completed a physical residual functional capacity assessment form on November 1, 2010, and indicated the claimant can occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, and stand, sit, or walk six hours in an eight-hour workday. He indicated the claimant can occasionally climb ladders, ropes, or scaffolds, and frequently climb stairs and ramps, balance, stoop, kneel, crouch, or crawl. Additionally, he noted the claimant is limited to occasional reaching overhead with the left upper extremity. He also noted the claimant should avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, odors, dusts, gases, and poor ventilation (Exhibit 14F). Further, Fulvio Franyutti, M.D. completed a case analysis form on February 11, 2011 and indicated Dr. Egnor's opinion in affirmed as written (Exhibit 15F). The undersigned gives great weight to Dr. Franyutti's and Dr. Egnor's opinions, as they are consistent with the medical evidence of record as a whole. Specifically, the undersigned notes the opinions are consistent with the consultative examiners observations, which revealed no significant abnormalities. Similarly, the treatment records from the claimant's cardiologist reveal normal findings. The undersigned notes treatment records from the claimant's general practitioners also consistently documented normal physical examinations.
>
> In sum, the above residual functional capacity assessment is supported by the opinions and findings of Dr. Egnor, Dr. Franyutti, Dr. Lilly, Dr. Freeman, Dr. Khorshad, and Dr. Rosenstock, as well as the medical evidence of record as a whole.

(Tr. at 85-88).

Credibility

The Fourth Circuit held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997)(unpublished)(an "ALJ's credibility findings… are entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could

reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. § 404.1529(b). If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c).

The ALJ considered all the symptoms asserted by Plaintiff and the extent of their consistency with the objective medical evidence and opinion evidence on the record. The ALJ held that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (Tr. at 85). The ALJ also held that "The objective evidence does not support the extreme limitations alleged" (Tr. at 86). The ALJ also noted that Plaintiff's activities of daily living are limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Plaintiff's adult function report, completed by Plaintiff with the assistance of Tracy Barker on January 25, 2010, reflected that he prepares meals once or twice a week (Tr. at 251). Plaintiff reported to being able to make the bed or sweep the floors depending on his energy level. (Id.) He does not need reminders to take his medicine or take care of his personal needs and grooming. Plaintiff reported to shopping online and in stores for groceries, personal items and medicine (Tr. at 252). He is able to pay bills, count change, handle a savings account and use a checkbook/money order. (Id.) He visits with friends and family which sometimes includes eating dinner together once or twice a week (Tr. at 253). Plaintiff reported on his adult function form that he goes to the grocery store and social group gatherings on a regular basis. Plaintiff reported to having no problems getting along with family friends, neighbors or others (Tr. at 254). He gets along with authority figures and handles changes in routine without problems (Tr. at 255).

Vocational Expert

  At the hearing on April 18, 2012, the ALJ asked the Vocational Expert (hereinafter, VE) if jobs existed in significant numbers in the national economy that someone with Claimant's age, education and lack of past work could perform (Tr. at 118). The ALJ instructed the VE to consider the individual to be limited to light work, and may only push/pull as much as he can lift/carry; he is limited to occasional reaching overhead with the left upper extremity; he may occasionally climb ramps and stairs, ladders and scaffolds; may frequently balance, stoop, kneel, crouch and crawl; he may never be exposed to hazards such as unprotected heights and moving mechanical parts; he may have occasional exposure to atmospheric conditions, extreme cold, and extreme heat; and he may have frequent exposure to vibration. The VE testified that such a person could perform jobs including such as non-postal mail sorter, electronics helper and battery tester (Tr. at 119). The VE testified that such a person could perform jobs at the sedentary level, such as an assembly worker, film inspector and finisher (Tr. at 120).

  The ALJ asked the VE if the jobs previously provided were available regionally and nationally (Tr. at 119-120). For light level work, the VE testified that there are 70,000 jobs nationally and 1,900 jobs regionally for the position of non-postal mail sorter. There are 97,500 jobs nationally and 2,350 jobs regionally for the position of an electronics helper. The VE testified that there are 45,000 jobs nationally and 1,000 jobs regionally for the position as a battery tester. For sedentary level work, the VE testified that there are 150,000 jobs nationally and 2,250 jobs regionally as an assembly worker. There are 28,000 jobs nationally and 1,750 jobs regionally as a film inspector. The VE testified that there are 33,000 jobs nationally and 1,300 jobs regionally for the position of a finisher (Tr. at 120). The ALJ asked the VE if his testimony was consistent with the Dictionary of Occupational Titles. The VE answered

affirmatively (Tr. at 121).

## Conclusion

The Court proposes that the presiding District Judge find that the ALJ's decision is supported by substantial evidence. The ALJ's finding that Plaintiff's statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objected medical evidence is supported by substantial evidence. Further, the ALJ's residual functional capacity assessment is supported by medical opinions and findings, as well as the medical evidence on the record as a whole.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Remand, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 28, 2014

_____
Dwane L. Tinsley
United States Magistrate Judge